**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **THE SOCIETY OF LLOYD'S,** *Plaintiff* | : | |
| **Vs.** | : | **C.A. No. 06-106T** |
| **BRUCE G. SUNDLUN,** *Defendant* | : | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff the Society of Lloyd's ("Lloyd's" or "Plaintiff"), by and through its undersigned counsel, moves for summary judgment against Defendant Bruce G. Sundlun ("Defendant") pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that there are no genuine issues of material fact to be determined, and that Plaintiff is entitled to judgment as a matter of law.

In support of its motion, Plaintiff relies upon the accompanying Memorandum of Law, Rule 12.1 Statement and the Declaration of Nicholas Demery and attached Exhibits.

THE SOCIETY OF LLOYD'S
By its Attorney,

/s/ Matthew T. Oliverio
Matthew T. Oliverio, Esquire (#3372)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax
mto@om-rilaw.com

**CERTIFICATION**

I hereby certify that a true copy of the within *PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT* was filed electronically with the United States District Court for the District of Rhode Island and is available for viewing and downloading from the Electronic Case Filing system. The following attorney received service by electronic means on this 30th day of October 2006:

Robert G. Flanders, Jr., Esquire
HINCKLEY ALLEN SNYDER LLP
1500 Fleet Center, Providence, RI 02903

/s/ Matthew T. Oliverio

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **THE SOCIETY OF LLOYD'S,** *Plaintiff* | : | |
| **Vs.** | : | **C.A. No. 06-106T** |
| **BRUCE G. SUNDLUN,** *Defendant* | : | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff the Society of Lloyd's ("Lloyd's" or "Plaintiff"), by and through its undersigned counsel, moves for summary judgment against Defendant Bruce G. Sundlun ("Defendant") pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that there are no genuine issues of material fact to be determined, and that Plaintiff is entitled to judgment as a matter of law.

As shown below, Sundlun consented to personal jurisdiction in the English courts, Sundlun had a properly appointed agent located in England when Lloyd's brought the underlying English action against him, and Lloyd's properly served that agent. As a result, the Defendant's argument that he was not subject to personal jurisdiction in England, and that he did not receive proper service of process of the English proceedings, are baseless. Consequently, the English Judgment should be enforced against Sundlun in all respects.

## FACTUAL BACKGROUND

### A. The Society of Lloyd's

The unique structure and operations of the Society of Lloyd's have been described on many occasions by American courts.[1] In *Haynsworth v. The Corporation*, 121 F.3d 956, 958-59

---

[1] *See, e.g.*, *The Society of Lloyd's v. Turner*, 303 F.3d 325, 326-27 (5th Cir. 2002); *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1295, 1287-88 (11th Cir. 1998); *Richards v. Lloyd's of London*, 135 F.3d 1289, 1291-92 (9th Cir. 1998); *Allen v. Lloyd's of London*, 94 F.3d 923, 927-28 (4th Cir. 1996).

(5th Cir. 1997), *cert. denied*, 523 U.S. 1072 (1998), the Fifth Circuit described Lloyd's in the following terms:

> Lloyd's is a 300-year-old market in which individual and corporate underwriters known as "Names" underwrite insurance. The Corporation of Lloyd's which is also known as the Society of Lloyd's, provides the building and personnel necessary to the Market's administrative operations. The Corporation is run by the Council of Lloyd's, which promulgates "Byelaws," regulates the market, and generally controls Lloyd's administrative functions.
>
> Lloyd's does not underwrite insurance; the Names do so by forming groups known as syndicates. Within each syndicate, participating Names underwrite for their own accounts and at their own risk . . . each syndicate is managed and operated by a Managing Agent, who owes the Names a contractual duty to conduct the syndicate's affairs with reasonable care . . .
>
> Names must become members of Lloyd's in order to participate in the market . . . Participation in the market also requires the execution of a number of contracts and agreements, the most important of which is the General Undertaking, the standardized contract between Lloyd's and the individual Names. Names additionally must enter into a Member's Agent's agreement, the contract that defines the relationship between the Name and his chosen Member's Agent, and one or more Managing Agent's agreements, which define the relationship between the Name and the managing Agents of the syndicates he wishes to join.

Under the terms of the General Undertaking, each Name agrees (1) to comply with the provisions of the Lloyd's Act 1871-1982 and any byelaw or regulation promulgated thereunder; (2) to submit any dispute arising out of or relating to his membership of, and/or underwriting insurance business at Lloyd's, for resolution by the English courts pursuant to English law; and (3) that a judgment in any proceedings brought in the English courts may be enforced in any other jurisdiction. Declaration of Nicholas Demery ("Demery Dec.") ¶ 7.

The Defendant in this case executed a General Undertaking as condition of his membership and continuing membership as a Name in the Lloyd's market and in order to continue underwriting. Demery Dec., ¶ 5. A true and accurate copy of the General Undertaking is attached as *Exhibit 1* to the Demery Declaration.

**B. <u>The Equitas Reinsurance Contract</u>**

In the late 1980's and early 1990's, Names in Lloyd's market incurred aggregate underwriting losses of more than $12 billion. Demery Dec., ¶ 9; *Society of Lloyd's v. Turner*, 303 F.3d 325, 327 (5th Cir. 2002). As a result of these losses, many Names became unable to satisfy their underwriting obligations and faced open-ended liabilities. *Id*. In an attempt to maintain its viability, Lloyd's developed a plan called the Reconstruction and Renewal Plan ("R&R"). R&R had two separate components: (1) an offer of settlement was made to each Name with liabilities on 1992 and prior underwriting years of account to end litigation and to assist them to meet these liabilities; and (2) the provision of reinsurance otherwise unavailable to each Name through a newly-formed company, Equitas Reinsurance Ltd. ("Equitas"). Demery Dec., ¶ 10. Under R&R, each Name was required to purchase reinsurance from Equitas by paying a premium, regardless of whether the Name accepted or rejected the settlement offer. Demery Dec. ¶ 11. The implementation of R&R was held by English courts to be within Lloyd's regulatory authority. *Id*.

Pursuant to the powers conferred upon it by the Lloyd's Acts, Lloyd's enacted the Substitute Agents Byelaw on July 10, 1983. A copy of this Byelaw is attached as *Exhibit 2* to the Demery Declaration. Under the Substitute Agents Byelaw, Lloyd's obtained the power to appoint Substitute Agents for Names at the discretion of the Council of Lloyd's (the ruling body of Lloyd's). Demery Dec., ¶ 13. In addition, in September 1996, the Council of Lloyd's issued the Resolution and Directions of the Council of Lloyd's, a copy of which is attached as *Exhibit 3* to the Demery Declaration. By virtue of this resolution, Lloyd's appointed Additional Underwriting Agencies (No. 9) Limited ("AUA9") as a Substitute Agent on behalf of the Names – including the Defendant here – with authority 'to execute the Reinsurance contract for itself and on behalf of the Members in such form as the council may direct and to undertake all obligations of the Substitute Agent under the Reinsurance Contract . . . and to perform all functions necessary therefore or incidental thereto.' Demery Dec. ¶ 14.

AUA9 signed the Equitas Reinsurance Contract on behalf of all Names, including Sundlun. Demery Dec., ¶ 15. Portions of this reinsurance contract are attached as *Exhibit 4* to the Demery Declaration. This contract obligated the Names to make payment of their Equitas premium when R&R became effective on September 3, 1996. *Id*. Moreover, pursuant to the Equitas Reinsurance Contract, each name "irrevocably appoint[ed] the Substitute Agent as agent to accept service of any proceedings in the English courts on his behalf." *Exhibit 4* at ¶ 25.2.

Approximately 95% of the Names accepted the settlement offer component of the R&R plan and paid their liabilities under the terms of the settlements. Demery Dec., ¶ 15. However, Sundlun did not accept the settlement offer or paid his Equitas premium – despite being obligated to do so pursuant to the Equitas Reinsurance Contract. Demery Dec., ¶¶ 16, 19.

**C. <u>Service And Prosecution Of The English Actions</u>**

Equitas validly assigned to Lloyd's its right to collect the Equitas premium from Names who had not yet paid it. Demery Dec., ¶ 17. Lloyd's thereupon commenced a substantial program of debt collection through the English courts. Demery Dec., ¶ 18. In particular, Lloyd's commenced legal proceedings against Sundlun in the High Court of Justice, Queen's Bench Division in London, England. Demery Dec., ¶ 19. Lloyd's served Defendant by serving a writ of summons and the prescribed acknowledgment of service form on their Substitute Agent, AUA9, in accordance with the terms of the Equitas reinsurance contract Demery Dec., ¶ 20. A true and accurate copy of the Writ of Summons is attached to the Demery Declaration as *Exhibit 5* and a true and accurate copy of the solicitor's Affidavit attesting to service is attached to the Demery Declaration as *Exhibit 6*. By letter dated May 28, 1997, AUA9 then forwarded a service copy of the writ of summons and the prescribed Acknowledgment of Service form together with Guidance Notes to Sundlun in the United States. Demery Dec., ¶ 22; *Exhibit 7*. By letter dated June 24, 1997, Sundlun acknowledged receipt of the courtesy copy of the writ of summons sent to him by Lloyd's solicitors, Dibb Lupton Alsop, on May 23, 1997. Demery Dec. ¶ 23; *Exhibit 8*. By serving the entity designated to accept service of process on behalf of

Defendant Sundlun, Lloyd's properly effectuated service on these Defendants under English law. Demery Dec., ¶ 26-31.

Despite being properly served through his agent with the English action brought by Lloyd's, Defendant did not contest the proceedings in the English court. Demery Dec., ¶ 24. Accordingly, the English court entered judgment in favor of Lloyd's against Sundlun (the "English Judgment"). A true and accurate copy of the English Judgment is attached as *Exhibit 9* to the Demery Declaration.

**D. <u>The Test Cases</u>**

Many of the Non-Accepting Names – although not Sundlun – raised a variety of defenses to Lloyd's right to recover the Equitas premium through the legal actions commenced by Lloyd's. Demery Dec., ¶ 26. These defenses included the argument that AUA9, the entity upon which Lloyd's had served writs of summons on behalf of many of the Non-Accepting Names, had not been validly appointed as the Names' substitute agent. Demery Dec., ¶ 27. Another defense was that Lloyd's claimed right to collect the Equitas premium from the Non-Accepting Names had been obtained by fraud. *Id.* To resolve these challenges, a number of "test cases" were selected to consider the validity of these defenses under English law. *Id*.

Hearings on the three test cases took place in 1996 and 1997. Demery Dec., ¶ 28. The outcome of these hearings was that all of the defenses raised by the Non-Accepting Names – including the argument that AUA9 had not been validly appointed as a Substitute Agent for the Names – were rejected. *Id*. A copy of the English court's decision to this effect is attached as *Exhibit 11* to the Demery Declaration.

The three "test case" Names thereupon appealed this decision to the Court of Appeal in England. Demery Dec., ¶ 28. Following hearings in July 1997, the Court of Appeal dismissed the Names' appeal and, in the process, upheld the lower court's determination that AUA9 had been validly appointed. Demery Dec., ¶ 29. In January 1998, the Judicial Committee of the House of Lords refused a petition for leave to appeal from the decision of the Court of Appeal.

*Id*. The English courts have now resolved all issues as to Lloyd's rights to recover the outstanding Equitas premiums from the Non-Accepting Names in Lloyd's favor. *Id*., ¶ 18.

### E. **<u>The Instant Action</u>**

Lloyd's filed this action pursuant to 28 U.S.C. §1332 and the Rhode Island Uniform Enforcement of Foreign Judgments, R.I. Gen. Laws § 9-32-1 (the "Enforcement Act") in order to enforce the English Judgment it obtained against Defendant Sundlun.

At the request of Defendant, and without waiting for a discovery request, Lloyd's agreed to produce any written materials in its possession showing the appointment of and service of the English proceedings upon the Defendant's agents in England. Lloyd's produced these materials in February 10, 2006 and again on March 22, 2006. Additional supporting documentation was also produced in response to Defendant's Request for Production.

Defendant has asserted two arguments in defense of Lloyd's claims. First, he contends that the English Judgment is not enforceable because the English court did not have personal jurisdiction over him. Second, Defendant argues that the English Judgment is not enforceable because he did not receive sufficient service of process with regard to the English proceedings.

## <u>STANDARD OF REVIEW</u>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered in favor of the moving party;

> if the pleadings, depositions, answers to interrogatories and submissions on file together with the Declarations, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment must be granted under Rule 56 unless there is a "genuine" issue as to a "material" fact. A factual issue is "material" only if it will effect the outcome of the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). An issue can be "genuine" only if

there is a sufficient evidentiary basis upon which a reasonable jury could find that a contract was formed. *Id* at 249. The non-moving party has an affirmative duty to establish the specific material facts to be decided and may not establish said facts merely by resting on the allegations in the pleadings. *Grissom v. Pawtucket Trust Co.*, 559 A.2d 1065 (R.I. 1989).

In assessing the appropriateness of a motion for summary judgment it must be recalled that "Conclusory allegations by the party opposing the motion cannot defeat the motion. The non moving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986).

American courts have previously granted summary judgment for Lloyd's in at least 14 other cases in which Lloyd's sought to enforce English judgments against Names in the federal courts. *See Society of Lloyd's v. Turner*, 303 F.3d 325 (5th Cir. 2002); *Society of Lloyd's v. Ashenden*, 233 F.3d 473 (7th Cir. 2000); S*ociety of Lloyd's v. McKellor*, No. CV-5-03-1249-KJD-LPL (D. Nev. Oct. 3, 2003); *Society of Lloyd's v. Shields*, No. 3:03-0032 (D. Tenn. Oct. 1, 2003), *aff'd*, 2004 WL 2649782 (6th Cir. 2004); *Society of Lloyd's v. Evnen*, No. 8:02cv118 (D. Neb. April 28, 2003); *Society of Lloyd's v. Davies*, No. 1:02-cv-1602-GET (N.D. Ga. April 23, 2003); *Society of Lloyd's v. Mullin*, 255 F. Supp. 2d 468 (E.D. Pa. 2003); *Society of Lloyd's v. Borgers*, 127 Fed. Appx. 959 (9th Cir. 2005); *Society of Lloyd's v. Blackwell*, No. 02CV488-T (S.D. Cal. 2003); *Society of Lloyd's v. Bennett*, No. 2:02-CV-204TC (D. Utah 2002) *aff'd*, 402 F.3d 982 (10th Cir. 2005); *Society of Lloyd's v. Reinhart*, No. 02-264 (D.N.M. 2002), *aff'd*, 402 F.3d 982 (10th Cir. 2005); *Society of Lloyd's v. Rosenberg*, No. 02-1195 (E.D. Pa. 2002); *Society of Lloyd's v. Grace*, 718 N.Y.S.2d 327 (1st Dep't 2000); *Society of Lloyd's v. Webb*, 156 F. Supp. 2d 362 (N.D. Tex. 2001), *aff'd*, 303 F.2d 325 (5th Cir. 2002); *Society of Lloyd's v. Edelman*, 2005 WL 639412 (S.D.N.Y. 2005).

This case presents clear questions of law as to the enforceability of the English Judgment, personal jurisdiction and the sufficiency of service of process, entitling Lloyd's to judgment as a matter of law.

## ARGUMENT

Defendant executed the General Undertaking, and therefore, subjected himself to personal jurisdiction in the courts of England, because he expressly agreed to submit any dispute concerning his activities as a Name to those courts, and because his Substitute Agent was properly served there. Moreover, Defendant received ample notice of the English proceedings through his agent, who accepted service of those proceedings on Defendant's behalf. Accordingly, the English Judgment is enforceable against Defendant Sundlun under federal law and Rhode Island law.

### I. The English Judgment Is Conclusive And Enforceable Because The English Courts Had Personal Jurisdiction Over Defendant.

#### A. The English Judgment Is Enforceable Under Principals of Comity and Full Faith and Credit.

Rhode Island has not adopted the Uniform Foreign Money Judgments Recognition Act with respect to judgments of international courts. Nevertheless, well established principles of international comity direct that the English Judgment be enforced in this Court. In an exhaustive treatment of the subject, the United States Supreme Court held, over a century ago:

> [W]e are satisfied that, where there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect, the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial or an appeal, upon the mere assertion of the party that the judgment was erroneous in law or in fact.

*Oman Intern. Finance Ltd. v. Hoiyong Gems Co*, 616 F. Supp. 351, 357 (D.R.I. 1985) (quoting from *Hilton v. Guyot*, 159 U.S. 113, 202-03, 16 S. Ct. 139, 158, 40 L.Ed. 95 (1895) (Gray, J.).

None of these considerations are present in the instant case, as the English judicial system has been consistently accepted as fair and neutral by federal courts and indeed is the origin of this country's concept of due process. *Society of Lloyd's v. Ashenden*, 233 F.3d at 476 ("Any suggestion that this system of courts does not provide impartial tribunals or procedures compatible with the requirements of due process of law borders on the risible) (collecting cases).

This Court in *Oman Intern. Finance Ltd. v. Hoiyong Gems Co.*, went on to apply federal due process standards to determine the enforceability of a foreign judgment:

> The critical inquiry in this regard is a familiar one; jurisdiction depends on principles of due process. The reviewing court must determine whether the defendant's contacts with the original venue (in this case, Hong Kong) were such that maintenance of the earlier suit and the requirement that the defendant be bound by the judgment therein comport with "traditional notions of fair play and substantial justice." *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L.Ed. 278 (1940). Of central relevance to this equation is the degree to which a defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

*Id* at 358. Thus, a judgment obtained in a foreign nation will be enforceable in this Court where the foreign tribunal had personal jurisdiction over the defendant. Other cases addressing nearly identical English Judgments obtained by Lloyd's, have held that the procedures set forth herein comported with due process and accordingly enforced the judgments. *Society of Lloyd's v. Edelman*, 2005 WL 639412 (S.D.N.Y. 2005) (collecting cases).

Along similar lines, Rhode Island has adopted the Uniform Enforcement of Foreign Judgments Act, R.I. Gen. Laws § 9-32-1 *et seq*. which streamlines the enforcement of foreign judgments defined as "any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this state." Although this statute has not been applied to a judgment from a foreign country, the reasoning in the cases applying this

statute is instructive; to wit: where courts of sister states have properly exercised subject-matter and personal jurisdiction, their judgments will be enforced in Rhode Island. *JH v. RB*, 796 A.2d 447 (R.I. 2002) (granting summary judgment based upon divorce judgment obtained in Florida).

Thus, where the court in which the judgment was obtained had personal jurisdiction over the defendant, the judgment will be enforced under Rhode Island law. *C & J Leasing Corp. v. Paolino*, 721 A.2d 839 (R.I. 1998). *See also Video Products Distributors, Inc. v. Kilsey*, 682 A.2d 1381 (R.I. 1996) (defendant may defeat subsequent enforcement of default judgment in another forum by showing that judgment was issued by a court lacking personal jurisdiction).

Consequently, pursuant to principles of international comity and due process, the English Judgment is enforceable unless Sundlun can establish his affirmative defenses of lack of personal jurisdiction or insufficient service of process.

### B. Defendant Sundlun Consented to Personal Jurisdiction in England.

Here, Defendant Sundlun protests that Lloyd's cannot enforce the English Judgment against him under the Act because he was not subject to personal jurisdiction in the court rendering this judgment. But this position must be rejected because Sundlun agreed in the General Undertaking to submit to jurisdiction in England.

As summarized by the *United States Supreme Court in Mitsubishi Motors, Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985), addressing the enforceability of an arbitration provision:

> We conclude that concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a domestic context.

*Id.* at 629. The Court cited to its earlier holding in *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. (1972), enforcing a forum selection clause choosing England as its forum, recognizing

that "agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting." *Id.* at 13-14.

Before the commencement of the English actions, Sundlun agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved. This agreement was made in the General Undertaking executed by Sundlun, in which each promised to submit "any dispute arising out of or relating to his membership of, and/or underwriting business at Lloyd's," to resolution in the courts of England. The type of forum selection clause contained in the General Undertaking is valid and enforceable under Rhode Island law. *American Biophysics Corp. v. Dubois Marine Specialties*, 411 F. Supp. 2d 61 (D.R.I. 2006) (Canadian corporation waived right to challenge personal jurisdiction by entering into contract containing forum selection clause); *Microfibres, Inc. v. McDevitt-Askew*, 20 F. Supp. 2d 316 (D.R.I. 1998) (objection to personal jurisdiction waived when employee signed agreement consenting to Rhode Island as forum).

The Courts of Appeals in at least eight different circuits have upheld the validity and enforceability of the forum selection clause contained in the General Undertaking. *See The Society of Lloyd's v. Cohen*, 2004 WL 1759248 (5th Cir. 2004) ("As the General Undertaking makes clear, Cohen irrevocably agreed to submit to the jurisdiction of the foreign country court with respect to the subject matter involved. As such, under . . . the Texas Recognition Act this Court may not refuse to recognize a foreign judgment for lack of personal jurisdiction."); *Lipcon*, 148 F.3d 1285; *Richards*, 135 F.3d 1289; *Haynsworth*, 121 F.3d 956, *cert. denied*, 523 U.S. 1072; *Allen*, 94 F.3d 923; *Bonny v. Society of Lloyd's*, 3 F.3d 156 (7th Cir. 1993), *cert. denied*, 510 U.S. 1113 (1994); *Roby v. Corporation of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993), *cert. denied*, 510 U.S. 945 (1993); *Society of Lloyd's v. Reinhart*, No. 02-264 (D.N.M. 2002), *aff'd*, 402 F.3d 982 (10th Cir. 2005); *Riley v. Kingsley Underwriting Agencies, Ltd.*,969 F.2d 953 (10th Cir. 1992), *cert. denied*, 506 U.S. 1021 (1992); *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227 (6th Cir. 1995); *Society of Lloyd's v. Borgers*, 127 Fed. Appx. 959 (9th Cir. 2005).

Since Sundlun agreed to submit to the jurisdiction of the courts of England with regard to his activities as a Name, Defendant's arguments concerning personal jurisdiction should be rejected. *C & J Leasing Corp. v. Paolino*, 721 A.2d 839 (R.I. 1998) (holding that lease consenting to Iowa forum valid under Rhode Island law because, "a party who signs an instrument manifests his assent to it and cannot later complain that he did not read the instrument of that he did not understand its contents.")

## II. <u>The English Judgment Is Conclusive And Enforceable Because The Defendant Was Properly Served With Process.</u>

### A. Defendant's Agent Was Served In England.

There is a wholly independent reason why Defendant's position on personal jurisdiction is incorrect: The Defendant's agent was served with the English proceedings in England. This constituted valid service on the defendant himself, and subjected Sundlun to personal jurisdiction in England. *See Farm Credit Bank of Baltimore v. Ferrera-Goitia*, 316 F. 3d 62, 68 (1st Cir. 2003) (recognizing that personal jurisdiction is usually obtained by service of process in the forum). "Service of process constitutes the vehicle by which the court obtains jurisdiction" over a defendant. *Cole v. Central States Southeast*, 225 F. Supp. 2d 96, 97 (D. Mass. 2002).

It is basic that service of process upon a defendant's agent constitutes effective service on the defendant himself. *See, e.g., Microfibres, Inc. v. McDevitt-Askew*, 20 F. Supp. 2d at 322 (attorney authorized to accept service of process); *Holloway v. Wright & Morrissey*, 739 F. 2d 695 (1st Cir. 1984) (corporation that appoints agent to accept service of process in forum also consents to exercise of personal jurisdiction) ; *Echeviarria-Gonzalez v. Gonzalez-Chapel*, 849 F.2d 24, 31 (1st Cir. 1988); *Tech Hills II Assoc. v. Phoenix Home Life Mutual Ins. Co.*, 5 F.3d 963, 968 (6th Cir. 1993).

For this reason, service of process on a defendant's agent confers personal jurisdiction over the defendant himself. *See Barr v. Zurich Insurance Co.*, 985 F. Supp. 701, 704 (S.D. Tex. 1997) (holding receipt of initial pleading by authorized agent to constitute receipt by defendant);

*Bodden v. Union Oil Co.*, 82 F. Supp. 2d 584, 588-89 (E.D. La. 1998) (holding service on authorized agent to constitute service on defendant regardless of whether agent forwards notice of suit).

In the context of Lloyd's collection actions against Names, the courts have made clear that, in keeping with the principles discussed above, service on a Name's Member's Agent or Substitute Agent constitutes good service on the Name himself. To begin with, there is no question that the Names' agents were validly appointed. The courts of England have specifically rejected arguments that the Names' Substitute Agent, AUA9, had not been duly appointed. Demery Dec., ¶ 26-31 and *Exhibits 11* and *12* (opinions from courts of England). The American courts have reached the same conclusion. *See, e.g., Turner*, 303 F.3d at 328 ("As Lloyd's was contractually authorized to do, Lloyd's appointed a substitute agent for the non-accepting Names."); *Society of Lloyd's v. Webb*, 156 F. Supp. 2d 632, 636 (N.D. Tex. 2001), *aff'd*, 303 F.3d 325 (5th Cir. 2002) ("Lloyd's used its bye-law powers from the Act 1982 to appoint a Substitute Agent.").

Because the Names' agents were validly appointed, American courts have repeatedly held that service on a Name's agent constitutes good service on the Name himself. In so holding, the courts have rejected arguments from other Names that service on the agent did not amount to service on the Name. *See Cohen, supra* at 14 (rejecting Name's argument that service on Substitute Agent did not effect good service on Name; "AUA9 was Cohen's agent and through this agency relationship Cohen received adequate notice of the foreign proceeding.")

In short, Sundlun cannot contest that service of process was not sufficient because it complied with the terms of the governing agreements and documents.

### B. <u>Defendant Sundlun Received Adequate Notice Of The English Proceedings.</u>

There is no requirement under Rhode Island or federal law that a defendant receive actual notice of legal proceedings, where, as here, an appointed agent received service. *Microfibres,*

*Inc. v. McDevitt-Askew*, 20 F. Supp. 2d at 322. Any argument to the contrary is without merit and must be rejected. As shown above, service on the Defendant's agent constituted service on the Defendant himself. For that reason, it simply does not matter whether the Defendant physically received a copy of the English proceedings. *Bodden v. Union Oil Co., supra* at 588-89.

Moreover, as the relevant correspondence from Sundlun makes clear, Sundlun received actual notice of the English proceedings. By letter dated June 24, 1997, Sundlun acknowledged receipt of the courtesy copy of the writ of summons sent to him by Lloyd's solicitors, Dibb Lupton Alsop, on May 23, 1997. Demery Dec. ¶ 23; *Exhibit 8*. Sundlun neither entered his appearance nor otherwise defended the English action. Sundlun neither appealed the English Judgment nor moved to vacate it. Demery Dec. ¶ ¶ 32, 33.

Accordingly, Sundlun had adequate opportunity to defend himself in the English court, the forum which he had consented to, and any attempt to contest the enforceability of the English Judgment in this Court must fail.

**CONCLUSION**

For the reasons set forth herein, Defendant Sundlun cannot establish any genuine issue of material fact regarding the validity and enforceability of the English Judgment and, accordingly, Lloyd's is entitled to judgment as a matter of law.

THE SOCIETY OF LLOYD'S
By its Attorney,

/s/ Matthew T. Oliverio
Matthew T. Oliverio, Esquire (#3372)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax
mto@om-rilaw.com

**CERTIFICATION**

I hereby certify that a true copy of the within *MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT* was filed electronically with the United States District Court for the District of Rhode Island and is available for viewing and downloading from the Electronic Case Filing system. The following attorney received service by electronic means on this 30th day of October 2006:

Robert G. Flanders, Jr., Esquire
HINCKLEY ALLEN SNYDER LLP
1500 Fleet Center, Providence, RI 02903

/s/ Matthew T. Oliverio