## SCHEDULE 3

## RESOLUTION AND DIRECTIONS OF THE COUNCIL OF LLOYD'S EFFECTIVE 3 SEPTEMBER 1996

Pursuant to the powers conferred by the Substitute Agents Byelaw (No. 20 of 1983) as amended, paragraph 6 of the Reconstruction and Renewal Byelaw (No.22 of 1995), section 6 of Lloyd's Act 1982 and all other powers enabling in that behalf the Council of Lloyd's ("the Council"):

**APPOINTMENT OF GLOBAL SUBSTITUTE MANAGING AGENT**

(A) hereby resolves that Additional Underwriting Agencies (No. 9) Limited be and is hereby appointed with immediate effect to act as substitute managing agent (the **Substitute Agent**), for

(i) the Members of such of the Syndicates and the Closed Year Syndicates as are constituted for the 1992 or any earlier year of account, in respect of that part of their underwriting business which comprises the entire business of such Syndicate or Closed Year Syndicate (except as otherwise set out herein in relation to Relevant Syndicates or the Relevant Business of any other Syndicate), and

(ii) the Members of such of the Syndicates as are constituted for the 1993 or any later year of account in respect of that part of their underwriting business which comprises the Syndicate 1992 and Prior Business of such Syndicates and all assets, cash and other items in respect of the Syndicate 1992 and Prior Business of such Syndicates (including assets and cash held in any Name's Premiums Trust Fund, LATF or LCTF and the right to recoveries under reinsurances, but excluding any assets or cash held in a Surplus Account which is in existence at the date of this resolution, outstanding cash calls, uncalled losses and open year deficiencies) except as otherwise set out

herein in relation to Relevant Syndicates or the Relevant Business of any other Syndicate; and

(B) considers that it is appropriate pursuant to the appointment at (A) above (the **Appointment**) to give the directions set out below.

**THE SUBSTITUTE AGENT**

1. The Council hereby directs that the Substitute Agent shall have the following functions, powers and duties:

(i) to carry out all the functions, powers and duties of a managing agent for the Business attributable to that Member, being the functions, powers and duties hitherto carried out for that Member by the Prior Underwriting Agent of that Member;

(ii) to carry out the aforesaid functions, powers and duties on the terms and conditions contained in the Standard Managing Agent's Agreement set out in Schedule 3 to the Agency Agreements Byelaw (No. 8 of 1988), save that for this purpose:

(A) clause 3(j) shall be deleted;

(B) in clause 3(p) of that agreement the words "until such time as the liabilities arising out of that business are covered by reinsurance to close" shall be deleted;

(C) clause 6 shall be deleted;

(D) clause 8 shall be deleted;

(E) in clause 9.3, the sentence "Forthwith upon such determination ...Trustees" shall be deleted;

(F) clause 11 shall be deleted and replaced by the sentence "The Name shall not have any right to terminate the appointment of the Agent.";

(G) clause 11A shall be deleted;

(H) clause 14 shall be deleted;

(iii) to do all such acts and things and execute all such deeds, instruments and documents relating to or in connection with the Business as may from time to time appear to the Substitute Agent to be requisite or expedient for the purposes of or in connection with the implementation of the Reconstruction and Renewal proposals (as defined in the Reconstruction and Renewal Byelaw (No. 22 of 1995)) including the Reinsurance Contract, the R&R Completion Agreement and the arrangements made by Lloyd's for the collection and delivery of money and other assets for the purpose of settlement of amounts payable under or in connection with the Reconstruction and Renewal proposals (and so that the following paragraphs are without prejudice to the generality of this paragraph);

(iv) to execute the Reinsurance Contract for itself and on behalf of the Members in such form as the Council may direct and to undertake all obligations of the Substitute Agent under the Reinsurance Contract or the R&R Completion Agreement and to perform all functions necessary therefor or incidental thereto;

(v) to execute the Centrewrite Reinsurance Contract, the PSL Companies Reinsurance Agreement, the E&O Companies Reinsurance Agreement, the Illinois Collateral Reinsurance, the Cession and Retrocession, the §1104.70 trust and the Surplus Trust, the Syndicate PSL Administration Agreement, the Settlement Agreement, the R&R Completion Agreement and such other agreements as appear to the Substitute Agent to be necessary or desirable for the implementation of the Reconstruction and Renewal proposals or the arrangements made by Lloyd's for the collection and delivery of money and other assets for the purpose of

settlement of amounts payable under or in connection with the Reconstruction and Renewal proposals, in each case in such form as the Council may direct or as the Substitute Agent may determine and whether on its own behalf and/or on behalf of any or all of the Members;

(vi) to take over the conduct of all proceedings and/or negotiations of whatever nature which the Prior Underwriting Agent has commenced against any Name (whether in respect of Names' Debts or otherwise) (including, but without limitation, the power to discontinue, settle or otherwise bring to an end such proceedings) and in such circumstances the Substitute Agent shall assume the liability for any additional costs incurred in taking such action;

(vii) to execute such assignments, novations, declarations of trust and other instruments whatsoever or directions whatsoever on behalf of any Member (whether pursuant to the Reinsurance Contract or otherwise) as appear to the Substitute Agent to be necessary or desirable to give effect to the terms of the Reinsurance Contract, the Settlement Agreement, the R&R Completion Agreement and any other agreements executed for the purposes of or in connection with implementing the Reconstruction and Renewal proposals, the transactions contemplated thereby or the arrangements made by Lloyd's for the collection and delivery of money and other assets for the purpose of settlement of amounts payable under or in connection with the Reconstruction and Renewal proposals and the transactions contemplated thereby;

(viii) to take all actions necessary or desirable to ensure compliance by each Member with all laws, byelaws, directions, regulations, rules, codes of practice, conditions and requirements applicable to the Member

in connection with that Member's Business;

(ix) to take control of and manage all bank accounts, funds and other investments maintained or managed or controlled by the Prior Underwriting Agent (or any director, agent or employee thereof) of each Member, whether directly or indirectly (including by delegation of sub-delegation) and whether as principal, agent or trustee, provided that this direction shall not apply to any bank account, fund or other investment held wholly for purposes other than those of the Business nor shall it apply to any bank account operated by a Prior Underwriting Agent (or any delegate thereof) in respect of a Relevant Syndicate or Relevant Business of any Syndicate or in respect of any Surplus Account which is in existence at the date of this resolution;

(x) to pay, apply and otherwise deal with any profits or surplus funds (howsoever constituted) which relate to the Business, after deduction by the Prior Underwriting Agent of any profit commission payable to it and payment by the Prior Underwriting Agent of such profits or surplus funds into a bank account opened by the trustees appointed by the Substitute Agent, in any manner provided by the arrangements made by Lloyd's for the collection and distribution of moneys and other assets for the purpose of the settlement of amounts payable under or in connection with the Reconstruction and Renewal proposals;

(xi) to grant indemnities on behalf of any Syndicate or Closed Year Syndicate to any bank, trustee, custodian or other person in connection with actions taken and documents signed by the Substitute Agent to effect movements of cash and transfers of assets to give effect to the terms of the Reinsurance Contract, the Settlement Agreement, the R&R Completion Agreement and

any other agreements executed for the purposes of or in connection with the implementation of the Reconstruction and Renewal proposals;

(xii) to grant and execute such powers of attorney as may be necessary or desirable in connection with the exercise of any of the powers, or the carrying out of any of the functions, referred to or contemplated by this direction;

(xiii) to take possession, custody or control of all such information, documents or other material in the possession, custody or control (which shall include where such information, documents or materials are held by a run-off company) of the Prior Underwriting Agent of each Member relevant to the Business, and to give all such access to such information, documents and other material as aforesaid as the Prior Underwriting Agent (or any run-off company acting for such an agent) may reasonably require and permit copying thereof at the expense of such Prior Underwriting Agent;

(xiv) to give to any other underwriting agent acting for that Member in relation to that part of his underwriting business to which the Substitute Agent is not appointed all such assistance in respect of his underwriting as the Substitute Agent considers necessary or expedient;

(xv) to do all such acts and things as are necessary to constitute itself or some or all of its directors (as the case may require) as trustees of the Premiums Trust Funds of each Member and of any other trust of which the Prior Underwriting Agent (or any director, agent or employee thereof) of each Member is at the date on which the appointment shall take effect trustee by virtue of the Prior Underwriting Agent of

that Member being or acting as managing agent for that Member in relation to the Business provided that such appointments as trustees shall not prevent the existing trustees continuing to act as such in respect of any Relevant Syndicates or Relevant Business of any other Syndicate or any Surplus Account which is in existence at the date of this resolution and, in such cases, to pay moneys into or out of the relevant Premiums Trust Funds;

(xvi) to direct/instruct Lloyd's Attorney-in-fact in the State of Illinois to enter into the §1104.70 trust and the Surplus Trust on behalf of certain of the Members and to direct such Attorney-in-fact to transfer such cash and/or securities (or other investment assets) as relate to 1992 and Prior Business held in the advance in respect of Illinois Retained Business (as defined in the Illinois Collateral Reinsurance) to the §1104.70 trust and/or the Surplus Trust;

(xvii) to prepare and draw up such reports, accounts or other documents (whether drawn up on an annual, monthly or other basis) in respect of the Business (or any part thereof) as may be required by the Council from time to time; and

(xviii) to advise the relevant members' agent or, where there is no such agent, the relevant substitute agent of each Member of the appointment.

2. The Council hereby resolves and directs that the Substitute Agent shall not be responsible for and shall have no liability in respect of any action taken or omission made by any Prior Underwriting Agent (or any director, employee or agent thereof) of any Member whether before or after the date on which the Appointment shall take effect and that the Substitute Agent's functions, powers and duties shall have

effect notwithstanding any breach, repudiation or termination of any agency or sub-agency agreement prior to the date on which the Appointment shall take effect.

**THE MEMBERS**

3. The Council hereby directs each of the Members, pursuant to paragraph 3 of the Substitute Agents Byelaw, not to interfere with the Substitute Agent in the performance of the powers and authorities granted to it under this direction.

4. The Council hereby directs each Member, any other underwriting agent acting for that Member, any run-off company and any Lloyd's broker or underwriting agent which may have dealt, or which may hereafter deal, with the Prior Underwriting Agent of that Member in respect of the Business of that Member:

   (i) to permit the Substitute Agent to carry out the functions, powers and duties for which it is appointed upon the terms and conditions herein set out; and

   (ii) to execute or concur in the execution of all contracts, deeds, assignments, mandates or other forms of authority or other documents reasonably required by or on behalf of the Substitute Agent (or any delegate thereof) for the purpose of carrying out the Business of that Member (including giving effect to the provisions of the Reinsurance Contract, the Settlement Agreement, the R&R Completion Agreement and any other agreement entered into in connection with or contemplated by the Reconstruction and Renewal proposals or the arrangements made by Lloyd's for the collection and delivery of money and other assets for the purpose of settlement of amounts payable under or in connection with the Reconstruction and Renewal proposals) pursuant to this resolution and these directions.

**THE EXISTING AGENT**

5. The Council hereby directs the Prior Underwriting Agent (and each director, employee and agent thereof, including a run-off company acting on its behalf) of each Member:

(i) to give the Substitute Agent possession, custody or control of all such information, documents or other material as aforesaid;

(ii) to permit and procure that the Substitute Agent or any delegate thereof has access to and control of, and to take all such actions and execute all such documents as may be necessary to grant the Substitute Agent or any delegate thereof access to and control of, all bank accounts, funds and other investments maintained or managed or controlled by the Prior Underwriting Agent (or any director, agent or employee thereof) of that Member, whether directly or indirectly (including by delegation or sub-delegation) and whether as principal, agent or trustee, (including, without limitation, making such directions to any existing or former Managing Agent's Trustees of any Premiums Trust Fund as the Substitute Agent or Lloyd's shall request to appoint the Substitute Agent to manage such bank accounts, funds and other investments) provided that this direction shall not apply to any bank account, fund or other investment held wholly for purposes other than those of the Business nor shall it apply to any bank account operated by a Prior Underwriting Agent (or any delegate thereof) in respect of a Relevant Syndicate or Relevant Business of any Syndicate or any Surplus Account which is in existence at the date of this resolution;

(iii) to resign when requested by the Substitute Agent as trustees (or procure the resignation of any trustee) of any or all of the trusts specified at paragraph

1(xv) above and to concur in the appointment of the Substitute Agent or any of its directors as new trustees provided that such request for resignation and appointment shall not be made of any Prior Underwriting Agent (or any delegate thereof) in respect of a Relevant Syndicate or Relevant Business of any Syndicate;

(iv) in relation to Relevant Syndicates or the Relevant Business of any other Syndicate, to pay any amount paid into the relevant Premiums Trust Fund by Equitas Limited (or another member of the Equitas group) for the settlement of a claim relating to the Business out of such Premiums Trust Fund in settlement of such claim as soon as reasonably practicable after receipt of such amount from Equitas Limited (or the other member of the Equitas group);

(v) to execute or implement or concur in the execution or implementation of all contracts, deeds, assignments, mandates or other forms of authority or other documents reasonably required by or on behalf of the Substitute Agent (or any delegate thereof) for the purpose of carrying out the Business of that Member (including giving effect to the provisions of the Reinsurance Contract, the Settlement Agreement, the R&R Completion Agreement and any other agreement entered into in connection with or contemplated by the Reconstruction and Renewal proposals or the arrangements made by Lloyd's for the collection and delivery of money and other assets for the purpose of settlement of amounts payable under or in connection with the Reconstruction and Renewal proposals) pursuant to this resolution and these directions;

(vi) to provide all such information in relation to the Business (or any part thereof) as the Substitute Agent (or any delegate thereof) may require for the

preparation of any reports, accounts or other documents by the Substitute Agent (or any delegate thereof) or at the Substitute Agent's request as specified at paragraph 1(xiii) above and to provide all such assistance as the Substitute Agent (or any delegate thereof) may require in connection with the preparation of such reports, accounts or documents;

(vii) to take such actions in connection with any existing proceedings and/or negotiations against any Member in connection with that Member's Business as the Substitute Agent (or any delegate thereof) shall request (including, but without limitation, discontinuing, settling or otherwise bringing to an end such proceedings); and

(viii) to do all such other acts and things as may reasonably be required by or on behalf of the Substitute Agent for the aforementioned purposes.

6. The Council hereby directs the Prior Underwriting Agent (and each director, employee and agent thereof including any run-off company acting on its behalf) of each Member at its own expense and upon request by the Substitute Agent (or any delegate thereof) forthwith:

(i) to procure and provide hard copy of, and make available a facility to download, data concerning the Business of that Member onto any system used by the Substitute Agent (or any delegate thereof); and

(ii) to procure and provide to any person authorised by any director of the Substitute Agent (or any delegate thereof) access to and interrogation of any computer system used by or on behalf of the Prior Underwriting Agent of that Member which holds data connected with the Business of that Member.

7. The Council hereby directs the Prior Underwriting Agent, upon or as soon as reasonably practicable after the Reinsurance Contract becomes unconditional in all respects, to pay any amounts held in any Surplus Account, after deduction by the Prior Underwriting Agent of any profit commission payable to it, into such account opened by the Substitute Agent in Names' Premium Trust Funds, LATFs or LCTFs as the Substitute Agent may specify for the purpose.

**REVOCATION**

8. For the avoidance of doubt the Council hereby resolves and directs that in consequence of the Appointment, the appointment and authority of the Prior Underwriting Agent of each of the Members as managing agent for that Member in respect of the Business of that Member be and hereby are revoked with effect from the date on which the Appointment shall take effect, provided that such revocation shall not take effect in relation to the appointment and authority of the Prior Underwriting Agent (or any trustee appointed by it) in respect of any Relevant Syndicate or of any Relevant Business of any other Syndicate or any Surplus Account which is in existence at the date of this resolution.

**MISCELLANEOUS**

9. For the avoidance of doubt the Council hereby resolves and directs:

(i) that nothing herein shall be construed or take effect as an assignment or novation of any agreement to which the Prior Underwriting Agent of any Member is a party;

(ii) that the appointment is made without prejudice to any right which any Member may have against the Prior Underwriting Agent of that Member in respect of breach

of contract, trust, or duty, or monies had or received; and

(iii) that references in this direction to:

(a) a member of Lloyd's include a former member of Lloyd's;

(b) a former member of Lloyd's include a former member who has died or, as the context may require, the estate or personal representatives of such a member; and

(c) a member of Lloyd's include references to any administrator, administrative receiver, committee, curator bonis, executor, liquidator, manager, personal representative, supervisor or trustee in bankruptcy, or any other person entitled or bound to administer the affairs of the member concerned.

10. If any provision of this resolution/direction is held to be invalid or unenforceable, then such provision shall (so far as it is invalid or unenforceable) be given no effect and shall be deemed not to be included in this resolution/direction but without invalidating any of the remaining provisions of this resolution/direction.

**DEFINITIONS**

11. In this resolution and direction the following expressions shall have the following meanings:

**§1104.70 trust** shall have the meaning set out in the Illinois Collateral Reinsurance;

**1992 and Prior Business** means all liabilities under contracts of insurance underwritten at Lloyd's (other than life business) and originally allocated to the 1992 year of account or any earlier year of account including, without limitation,

any such liabilities reinsured to close into the 1993 or any later year of account but excluding any liabilities re-signed, or re-allocated pursuant to a premium transfer, into 1993 or any later year;

**the Business** means, in relation to a Member, that part of the underwriting business of the Member which relates to 1992 and Prior Business, excluding the underwriting business of any Relevant Syndicate and Relevant Business;

**Centrewrite Reinsurance Contract** means the Agreement between, inter alia, Equitas Reinsurance Limited and Centrewrite Limited for the reinsurance of Centrewrite Limited in respect of its liabilities to syndicate 553 for the 1985 and 1987 years of account;

**Cession and Retrocession** shall have the meaning set out in the Illinois Collateral Reinsurance;

**Closed Year Syndicate** means, any syndicate constituted for the 1992 or prior year of account which has been reinsured to close either directly or indirectly into any Syndicate or Centrewrite Limited;

**Closed Year Names** means, in respect of any Closed Year Syndicate, those members of Lloyd's who were members of that Closed Year Syndicate acting in their capacity as members of the Closed Year Syndicate;

**delegate** means any person to whom the Prior Underwriting Agent or the Substitute Agent has delegated or delegates any part of the run-off of the Business;

**E&O Companies Reinsurance Agreement** means the contract of reinsurance between Equitas Reinsurance Limited and various E&O company underwriters in respect of all liabilities in respect of 1992 and Prior Business under various policies as set out therein;

**Equitas Scheme** means the scheme for the reinsurance by Equitas Reinsurance Limited of all 1992 and Prior Business as described in the Reconstruction and Renewal Byelaw;

**Illinois Collateral Reinsurance** means the contract for the reinsurance of the Illinois Retained Business of Names and Closed Year Names authorised by a Certificate of Authority to write certain classes of insurance business in the State of Illinois made between Equitas Reinsurance Limited, such Names and Closed Year Names and Lloyd's Attorney-in-Fact in Illinois (such terms as defined therein);

**LATF** means any trust fund from time to time held in respect of a Name under the terms of the Lloyd's American Trust Deed;

**LCTF** means any trust fund from time to time held in respect of a Name under the terms of the Lloyd's Canadian Trust Deed;

**Lloyd's American Trust Deed** or **LATD** means the instrument dated 21 December 1995 constituting the amended and restated Lloyd's American Trust Deed as amended from time to time;

**Lloyd's Canadian Trust Deed** or **LCTD** means the instrument dated 26 September 1995 constituting the amended and restated Lloyd's Canadian Trust Deed as amended from time to time;

**Managing Agent's Trustees** means the trustees of the Premiums Trust Funds appointed by the Substitute Agent in its capacity as the substitute managing agent of the Syndicates and the Closed Year Syndicates;

**Members** means the Names and the Closed Year Names;

**Names** means, in respect of each Syndicate, the members of Lloyd's as set out in the relevant Syndicate List acting in their capacity as members of the Syndicate;

**Names Debts** means, in relation to a Segregated Account, amounts payable by Names in respect of deferred, uncalled and called but unpaid losses relating to Syndicate 1992 and Prior Business;

**Premiums Trust Deed** means a trust deed (as amended from time to time in accordance with its terms) the parties to which include a Name and Lloyd's in one of the relevant forms for general business approved for the time being by the Council and (under section 83 of the Insurance Companies Act 1982 or corresponding prior legislation) the Secretary of State;

**Premiums Trust Fund** means, the fund of premiums and other moneys and assets from time to time held upon the terms of a Premiums Trust Deed;

**Prior Underwriting Agent** shall have the meaning set out in the Substitute Agents Byelaw (No. 20 of 1983, as amended);

**PSL Companies Reinsurance Agreement** means the Agreement to be entered into between Equitas Reinsurance Limited and certain

company PSL underwriters in respect of their liability to certain of the Members under personal stop loss policies;

**R&R Completion Agreement** means the Agreement between certain Equitas group companies and Lloyd's setting out the terms upon which certain funding and cashflow matters are dealt with as part of the completion arrangements and the relationship between Lloyd's and Equitas in the future;

**Reinsurance Contract** means the reinsurance and run-off contract to be entered into between, inter alia, Equitas Reinsurance Limited, the Substitute Agent (on behalf of the Members) and Lloyd's pursuant to which Equitas Reinsurance Limited will conditionally agree to reinsure the 1992 and Prior Business;

**Relevant Syndicate** means the syndicates specified in the attached Schedule 2;

**Relevant Business** means that part of the business of any Syndicate which constitutes business for which a non-imprest account system is operated;

**run-off company** means a company approved and registered under the Run-off Companies Byelaw (No. 2 of 1995);

**Segregated Account** means, in respect of any Syndicate, any segregated account established pursuant to a Supervisory Management Agreement in respect of the Syndicate 1992 and Prior Business of that Syndicate;

**Settlement Agreement** means the agreement to be entered into by, inter alia, Members who accept the settlement offer made by Lloyd's in relation to the settlement or release of certain claims and rights against various parties thereto;

**Surplus** means, in respect of any Syndicate, the amount, if any, of any surplus as shown in the line entitled "shortfall/release" in the final reserve indication sent to that Syndicate in July 1996;

**Surplus Account** means, in relation to a Syndicate, assets standing to the credit of a Premiums Trust Fund, LATF or LCTF representing a surplus;

**syndicate** means a group of underwriting members of Lloyd's, to which a particular number is assigned by or under the authority of the Council, for whose account an active underwriter accepted or accepts insurance business at Lloyd's;

**Syndicates** means the syndicates specified in the attached

Schedule 1 as constituted for the years of account specified in the attached Schedule 1 (and **Syndicate** shall be construed accordingly);

**Syndicate 1992 and Prior Business** means, in respect of any Syndicate or Closed Year Syndicate, all 1992 and Prior Business underwritten at Lloyd's by Names or Closed Year Names as members of the Syndicate or Closed Year Syndicate (including as reinsurers under contract of reinsurance to close of any syndicate year of account reinsured to close either directly or indirectly by the Syndicate) and/or where the Syndicate is a 1993 or later year of account syndicate any liabilities under contracts of insurance relating to 1992 and Prior Business reinsured to close into the 1993 or any later year of account;

**Syndicate List** means, in respect of each Syndicate, the schedule or schedules prepared in respect of the Syndicate specifying the Names who are members of the Syndicate (or any other person certified by Lloyd's as having participated in the relevant syndicate), the members syndicate premium limit of each member of the Syndicate, the basis and level of the managing agent's remuneration and containing such other particulars as may for the time being be required by the Council;

**Syndicate PSL Administration Agreement** means the agreement for, inter alia, the payment of sums due by syndicate PSL underwriters in respect of personal stop loss policies taken out by certain of the Members.

AND THE COUNCIL in exercise of all powers it enabling HEREBY FURTHER RESOLVES AND DIRECTS that the engrossed unexecuted Deed produced to the Council and containing the like provisions as those hereinbefore set out and also containing or incorporating by reference the like Schedules as the Schedules hereto shall forthwith be executed as a deed by having the Common Seal of the Society affixed thereto in the

presence of any one of the Chairman, the Chief Executive, Members of Council, the Secretary or any Assistant Secretary to the Council here present who shall act as authorised signatory for the purposes of such execution.

**DATED THIS 3rd DAY OF SEPTEMBER 1996**