UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THE SOCIETY OF LLOYD'S,<br>Plaintiff, | : | |
| v. | : | C.A. No. 06-106-T |
| BRUCE G. SUNDLUN,<br>Defendant. | : | |

**AFFIDAVIT OF BRUCE SUNDLUN**

I, Bruce Sundlun, upon oath, depose and state that:

1. I have personal knowledge of the facts stated herein and am competent to testify to such facts.

2. At some point prior to 1987, my friend Morton Smith, a very prominent insurance agent in Rhode Island, suggested that I become a member of Lloyd's.

3. At that time, I understood that any membership in Lloyd's would be an honorary position and that I would face no risk or liability in my capacity as a Lloyd's member.

4. I personally took no steps, however, to become a member of Lloyd's.

5. I signed no membership application and no General Undertaking Agreement, nor did I authorize anyone else to do so on my behalf. The signature on the 1987 General Undertaking Agreement that Lloyd's is relying upon is not my signature, nor did I authorize anyone else to sign my name to that document. Indeed, I never saw

this Agreement until after Lloyd's sought to recover on the English default judgment here in Rhode Island.

6. I did not agree to submit disputes with Lloyd's to English Courts or that Lloyd's could appoint an agent on my behalf to accept service of process or to act for me for any other purpose. Nor did I agree that Lloyd's could enact "bye laws" that would bind me to reinsurance agreements, to the appointment of an agent to enter into various unknown agreements on my behalf without my consent, or to any other undertakings to which I did not agree.

7. I never submitted to any financial means test and was never asked to, nor did I ever, post any security in connection with any membership with Lloyd's. I also did not personally appear in London before a representative of the Council of Lloyd's, and I was never informed about, nor did I acknowledge, the risks and requirements of membership, including the fact that membership would subject me to unlimited personal liability.

8. On or before January 1, 1993, I terminated any alleged affiliation between myself and Lloyd's.

9. Over four years after I did so, on February 21, 1997, Lloyd's filed suit against me in England, but I was not aware at that time that it had done so. Indeed, at no time on or before June 24, 1997, the date when, as I later learned, an English Court entered a default judgment against me, was I served with a copy of the lawsuit or with any legal papers relating thereto (e.g., a Writ of Summons or an Acknowledgement of

Service and Guidance Notes). Nor did I otherwise receive notice of the Lloyd's lawsuit in time for me to have an opportunity to defend myself.

10. Some time on or shortly before June 24, 1997, the same day (unbeknownst to me) that the default judgment entered, I received a letter from Additional Underwriting Agencies (No. 9), Limited ("AUA9") relating to the Lloyd's lawsuit. This was an English firm that was unknown to me, but it purported to be the agent that Lloyd's supposedly designated to accept service of process for me. I responded by informing them of my previous resignation from Lloyd's and explaining that I did not understand how I faced any liability. See Exhibit A. Contrary to Lloyd's allegations, the letter failed to enclose any Writ of Summons or form for Acknowledgement of Service, nor did I receive or acknowledge receipt of such documents from AUA9 or anyone else.

11. On July 25, 1997, I wrote to AUA9, informed AUA9 that I had not received a copy of the Writ of Summons, asked for further details underlying the basis of Lloyd's lawsuit against me, and requested the name of Lloyd's counsel. See Exhibit B.

12. I received a reply to this letter on August 28, 1997. In the letter, AUA9 finally identified Dibb Lupton Alsop as counsel for Lloyd's. They still failed, however, to provide a copy of the Writ of Summons. See Exhibit C.

13. With no copy of the Writ of Summons or timely notice of the claims against me, I had no meaningful opportunity to defend myself against Lloyd's claims.

Bruce Sundlun

SUBSCRIBED AND SWORN to before me this 9th day of November, 2006.

Sharon D. Kenyon NOTARY PUBLIC 55020

My Commission Expires: 03/21/2009

# EXHIBIT
# A

Former
Governor's Residence

June 24, 1997

Additional Underwriting Agencies (No. 9), Ltd.
One Lime Street
London, EC3M 7HA

Seaward
Cliff Avenue
Newport, Rhode Island 02840

Gentlemen:

Acknowledging your letter of 28 May 1997, I resigned from Lloyd's of London in 1993. I do not understand how I have any liablility.

Please advise.

Sincerely,

Bruce Sundlun

Dictated but not read.

BS:cr

# EXHIBIT
# B

Former
Governor's sidence

July 25, 1997

Ms. Deborah (ineligible)
Additional Underwirting Agencies (No. 9), Ltd.
One Lime Street
London, EC3M 7HA

Seaward
Cliff Avenue
Newport, Rhode Island 02840

Dear Deborah:

With reference to DAW/lew/aua9-10/1BS-1.sam.

In reply to your letter of July 1, 1997, I do not have the "writ already supplied." I do require further details of the basis of the claim, and I would be glad to contact the plaintiff for the solicitors, but I do not know who they are.

I would appreciate any assistance that you can furnish.

Sincerely,

Bruce Sundlun
cr

Bruce Sundlun

BS:cr

# EXHIBIT
# C

**Additional Underwriting Agencies (No. 9) Limited**
**One Lime Street**
**London EC3M 7HA**
**Tel: 0171 327 6139**
**Fax: 0171 327 6156**

Our ref: DAW/lew/aua9-10/288let

28 August 1997

Dear Mr Sundlun

Thank you for your letter of 25 July.

Further details of the basis of the claim can be obtained if you contact the plaintiff's solicitors, namely Dibb Lupton Alsop, 6 Dowgate Hill, London EC4R 2SS.

If you have not already taken steps to defend the proceedings issued against you nor taken appropriate independent legal advice, we would urge that you do so as a matter of urgency.

Yours sincerely

Authorised Representative
of Additional Underwriting Agencies (No 9) Limited