**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **THE SOCIETY OF LLOYD'S,** *Plaintiff* | : | |
| **Vs.** | : | **C.A. No. 06-106T** |
| **BRUCE G. SUNDLUN,** *Defendant* | : | |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff, the Society of Lloyd's ("Lloyd's" or "Plaintiff") by and through its undersigned counsel, hereby files its reply to address certain issues raised in the Defendant Bruce G. Sundlun's ("Defendant" or "Sundlun") objection. In further support of its motion, Plaintiff relies upon the accompanying Supplemental Declaration of Nicholas Demery ("Supp. Decl.") and attached exhibits.

## LEGAL ARGUMENT

### I. There is No Genuine Dispute that Sundlun was a Member of Lloyd's.

The Supplemental Declaration of Nicholas Demery and attached exhibits clearly establish that Sundlun personally took various steps and demonstrated his financial means in order to become a member of Lloyd's on or about January 1979. Sundlun personally signed applications and provided financial information to Lloyd's with the specific purpose of becoming an underwriting member of Lloyd's. As set forth in *Suppl. Decl. Exhibit 3*, Sundlun acknowledged his potential unlimited liability and risks of membership, expressly contrary to the representation in Sundlun's Affidavit that he was to be merely an "honorary position." (Aff. ¶ 3). There is simply no genuine dispute that Sundlun was an underwriting member of Lloyd's from January 1, 1979 through December 31, 1992.[1]

---

[1] Plaintiff submits that the documents contained in Sundlun's membership file seriously undermine the credibility and veracity of Sundlun's entire Affidavit such that it should be disregarded by this Court.

By tendering his resignation on or about October, 1992, *Suppl. Decl. Exhibit 6*, Sundlun expressly admitted that he was an underwriting member until "***the year end following the time as from which reinsurance to close in respect of every year of account of every syndicate of which I am a Member has taken effect or at such other date as the Council/Committee of Lloyd's may in its absolute discretion determine***." (Emphasis added.)[2] Thus, although Sundlun ceased underwriting new business effective December 31, 1992, Sundlun's "period of membership" continued until all of his unpaid underwriting obligations (including that for his reinsurance to close into Equitas) were paid. Sundlun's obligation for reinsurance premiums for the closure into Equitas of a number of his accounts was the subject of the English Judgment.

There is likewise no genuine dispute that Sundlun is responsible for all liabilities and risks incurred during the period of his membership. As set forth in the 1979 Undertaking, Sundlun remained a member until all the accounts of any underwriting business entered into by Sundlun or on his behalf shall have been fully wound up, and he was further obligated to make arrangements for the discharge of his outstanding liabilities. *Suppl. Decl. Exhibit 4*. Sundlun's accountant acknowledged this fact as well. *Suppl. Decl. Exhibit 6*. Accordingly, Sundlun is liable for the premium adjudged in the English Judgment for obligations arising from his membership in 1992 and prior underwriting years.

## II. There is No Genuine Dispute that the Bylaws, Resolutions and Agreements are Applicable to Sundlun.

By its terms, the Reconstruction and Renewal Byelaw of 1995, applies to all members and ***former*** members who remain subject to liabilities covered by the Equitas reinsurance. The Equitas reinsurance covered underwriting obligations in the1992 and prior underwriting years. *See Declaration of Nicholas Demery ("Demery Decl.")*. Sundlun was an underwriting member in 1992 and for over ten years prior thereto, and he continued as a member subject to all Byelaws

[2] This fact is further evidenced by Sundlun's letter to his agent, attached as *Exhibit A* to his Affidavit, admitting to his underwriting membership through 1993.

and agreements until his liabilities were settled or extinguished. *Demery Decl. Exhibits 10 and 11*.

Despite Sundlun's protestations to the contrary, he continued to have a relationship as a member with Lloyd's after submitting his resignation as an underwriting member. Although Sundlun ceased underwriting, there is no evidence that he terminated his membership with Lloyd's, but rather had remaining obligations as a member. *Suppl. Decl. Exhibit 6*. Thus, the period of Sundlun's membership continued until his liabilities as a member were settled. Consequently, the Substitute Agents Byelaw, enacted in 1983, as well as the 1996 Resolution and Directions, was applicable to Sundlun as a member of Lloyd's, such that the Reinsurance Contract entered into with Equitas Reinsurance Limited and all other subsequent agreements and resolutions consenting to jurisdiction, choice of law and service of process are binding on Sundlun.[3]

**III. The English Court Properly Exercised Jurisdiction Over Sundlun.**

Defendant's citations to sections of the Restatement (Second) of Judgments pertaining to notice and due process are not pertinent to the facts of this case, as Sundlun consented to service of process through the substitute agent duly designated by Lloyd's on his behalf as a member, AUA9. It is well established that the appointment of an agent for service of process complies with personal jurisdiction in accordance with traditional concepts of due process. *See Holloway v. Wright & Morrissey, Inc.*, 739 F.2d 695, 697 (1st Cir. 1984) (corporation that authorizes an agent to receive service of process in compliance with the requirements of a state statute, consents to the exercise of personal jurisdiction in any action that is within the scope of the agent's authority.)

Moreover, the cases cited by Defendant in support of his contention that the notice requirements should be strictly construed in the case of a foreign default judgment are factually

[3] These issues and arguments are set forth in the pleadings previously filed with the Court in support of Plaintiff's Motion for Summary Judgment.

and legally inapposite as they address particular state statutes where service was not properly effectuated, and not international judgments where service was made upon an authorized agent. *Zander v. Martine*, 169 A.2d 228 (N.J. Super. 1961) (statutory non resident motorist law); *Sours v. State Director of Highways*, 175 N.E. 2d 77 (Ohio 1961) (construing residence service statute).

## IV. Sundlun's Denial of His Signature on the General Undertaking Does Not Create a Genuine Issue of Fact Precluding Summary Judgment.

Sundlun has denied that he signed the General Undertaking.[4] However, this denial, as well as the other denials set forth in his Affidavit, contradicts the numerous documents he signed in connection with his membership in Lloyd's. *Suppl. Decl. Exhibits 1-6*. In addition, although a handwriting expert was engaged by Sundlun to review the original General Undertaking at Plaintiff's counsel's office in response to this Motion for Summary Judgment, no expert affidavit was furnished to attest to the non genuineness of Sundlun's signature or the fact that it was a forgery. *Compare Namas Noor SDN BHD v. Williams*, 112 F. Supp. 2d 580 (M.D.La. 2000) (when validity of authentic act is attacked, party must proffer 'convincing proof' of fraud or forgery); *Banco Popular North America v. Victory Taxi Management*, 774 N.Y. S. 2d 480, 806 N.E. 2d 488 (2004) (affirming summary judgment where expert affidavit was inconclusive and defendant's denial of signature was inconsistent with pre litigation conduct). For these reasons, Plaintiff submits that Sundlun's bald denial, without more, does not create a genuine issue of material fact to defeat summary judgment. *See Beitner v. Becker*, 2006 WL 3237792 (N.Y. App. Div. 2nd Dept. 2006) (and cases cited therein) (granting summary judgment on promissory note holding that "Something more than a bald assertion of forgery is required to create an issue of fact contesting the authenticity of a signature."); *Triffin v. Somerset Valley Bank*, 777 A.2d 993 (N.J. App. Div. 2001) (conclusory statements were insufficient evidence to establish invalidity of signature.)

---

[4] The General Undertaking refers to the document dated January 1, 1987 attached to the Demery Declaration as *Exhibit 1*.

Furthermore, Lloyd's motion does not depend solely upon the execution of the General Undertaking, as the Equitas Reinsurance Contract, to which Lloyd's members, including Sundlun, are party contains a choice of law clause consenting to the application of English law and a forum selection clause consenting to jurisdiction in the courts of England. *See Suppl. Decl. Exhibit 7*.

**V. Sundlun Received Sufficient Notice of the English Lawsuit Which Comported with Due Process.**

Defendant cites to no authority for the proposition that Sundlun's alleged failure to receive an actual copy of the summons and complaint prior to the entry of default judgment rendered service of process inadequate as a matter of law. To the contrary, the cases hold that service of process upon an authorized agent comports with due process and that actual personal notice is not required. *See Plaintiff's Memorandum in Support of Motion for Summary Judgment, pp. 12-14*. *See also Society of Lloyd's v. Ashenden*, 233 F.3d 473, 480-481 (7th Cir. 2000) (ruling "the key question is not the fairness of Lloyd's measures but the fairness of the English court in holding Lloyd's was authorized by its contract with the names to appoint agents to negotiate a contract that would bind the names without the names' consent. This interpretation of the original contract . . . is not so unreasonable that it could be thought a denial of international due process even if international due process had a substantive component.")

Moreover, the correspondence with Sundlun previously submitted to the Court indicates that a copy of the summons was sent to Sundlun by AUA9 by letters dated May 28, 1997 and May 23, 1997. *Demery Decl. Exhibit 7, 10*. Sundlun proffers no reason to controvert the reasonable inference that these documents were received by Sundlun prior to the entry of the English Judgment on June 24, 1997. In fact, Sundlun's own correspondence acknowledges receipt of a May 23, 1997 letter from Lloyd's solicitors regarding the claims against him. *Demery Decl. Exhibit 8*.

## CONCLUSION

For the reasons set forth herein and in the Memorandum, Statement of Undisputed Facts and Declaration of Nicholas Demery and attached Exhibits previously filed with this Court, Plaintiff's motion for summary judgment should be granted in all respects.

For the reasons set forth herein and in the Memorandum, Statement of Undisputed Facts and Declaration of Nicholas Demery and attached Exhibits previously filed with this Court, Defendant's cross motion for summary judgment should be denied in all respects.

Plaintiff,
By its Attorney,

/s/ Matthew T. Oliverio

Matthew T. Oliverio, Esquire (#3372)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax
mto@om-rilaw.com

## CERTIFICATION

I hereby certify that a true copy of the foregoing *PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT* was filed electronically with the United States District Court for the District of Rhode Island and is available for viewing and downloading from the Electronic Case Filing system. The following attorney received service by electronic means on this 22nd day of December 2006:

Robert G. Flanders, Jr., Esquire
HINCKLEY ALLEN SNYDER LLP
1500 Fleet Center, Providence, RI 02903

/s/ Matthew T. Oliverio