**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **THE SOCIETY OF LLOYD'S,** | : | |
| ***Plaintiff*** | : | |
| | : | |
| **Vs.** | : | **C.A. No. 06-106L** |
| | : | |
| **BRUCE G. SUNDLUN,** | : | |
| ***Defendant*** | : | |

**PLAINTIFF'S PRETRIAL MEMORANDUM**

Plaintiff, the Society of Lloyd's ("Lloyd's" or "Plaintiff") by and through its undersigned counsel, hereby files its Pretrial Memorandum in accordance with this Court's Order of March 1, 2007.

**1. FACTS TO BE PROVEN AT TRIAL**

**Nicholas Demery**: Nicholas Demery is a solicitor employed by the Society of Lloyd's in the litigation section of the Legal & Compliance Department. Mr. Demery has personal knowledge of the facts of this case and the history and structure of Lloyd's acquired in the course of his employment at Lloyd's.

It is anticipated that Mr. Demery will testify as to the history, structure and byelaws pertaining to Lloyd's and its role as a regulator of an English insurance market located in London, England. Lloyd's regulatory responsibilities are currently vested in, and must be carried out by, the Council of Lloyd's. Lloyd's Act 1982 Section 6(1). Among its regulatory responsibilities, Lloyd's promulgates and enforces regulations in accordance with its powers and obligations under the Lloyd's Acts, and exercises disciplinary authority over persons in the Lloyd's market.

Lloyd's is not an insurer and does not insure risks. The only insurers in the Lloyd's market are underwriting members of Lloyd's, who are known as Names. The U.K. Insurance Companies Act 1982 (now the Financial Services & Markets Act 2000) permits members of Lloyd's or "Names" to lawfully conduct insurance business only as long as they become, and remain, subject to Lloyd's regulatory jurisdiction. Thus, membership in Lloyd's and compliance with Lloyd's regulations and requirements is a license lawfully to conduct insurance business in the United Kingdom directly with policyholders in respect of insurance risks assumed independently by Names.

Mr. Demery will also testify regarding Defendant Bruce G. Sundlun's ("Sundlun") membership in Lloyd's, the application and financial means process and the agreements he signed pertaining to his status as a Name. Sundlun was elected a member of Lloyd's on January 1, 1979. One of the agreements that Sundlun executed was the General Undertaking.

In the General Undertaking, Sundlun agreed, among other things, that: (a) he would comply with the provisions of the Lloyd's Acts 1871-1982 and any byelaws, regulations, etc. duly promulgated thereunder in connection with his membership of and underwriting at Lloyd's; (b) any dispute arising out of or relating to his membership of, and/or underwriting of insurance business at, Lloyd's would be resolved in English courts pursuant to English law; and (c) a judgment in any Proceedings brought in the English courts may be enforced in the courts of any other jurisdiction.

Mr. Demery will also testify regarding the liabilities incurred by the Lloyd's Names, including Sundlun, for underwriting losses incurred in the late 1980s and early 1990s. Mr. Demery will testify as to the litigation that ensued against Lloyd's and others, and the settlements and agreements entered into to resolve these issues and preserve Lloyd's viability in financial

markets. Lloyd's devised the Reconstruction and Renewal ("R&R") plan which had two separate components: (1) an offer of settlement was made to each Name with liabilities on 1992 and prior underwriting years of account to end litigation and to assist them to meet these liabilities, and (2) the provision of reinsurance otherwise unavailable to each Name in respect of his or her underwriting obligations on 1992 and prior underwriting years of account through a newly-formed company, Equitas Reinsurance Ltd. ("Equitas"). The R&R plan mandatorily effected reinsurance to close for each Name into Equitas, and required each Name to pay their individual costs of reinsurance by payment of a premium to Equitas (the "Equitas premium"), regardless of whether the Name accepted or rejected the settlement offer.

The implementation of the R&R plan was held by English courts to be within Lloyd's regulatory authority. *R v. The Council of the Society of Lloyd's ex parte Susan Rachel Johnson* (16 August 1996). *Society of Lloyd's v. Leighs, Lyon and Wilkinson* (Court of Appeal 31 July 1997).

Mr. Demery will also testify regarding the appointment of Additional Underwriting Agencies (No. 9) Limited ("AUA9") as the Substitute Agent on behalf of the Names, including Sundlun, with the authority "to execute the Reinsurance Contract for itself and on behalf of the Members in such form as the Council may direct and to undertake all obligations of the Substitute Agent under the Reinsurance Contract….and to perform all functions necessary therefore or incidental thereto." AUA9 signed the Equitas reinsurance contract on behalf of all Names. When the R&R plan became effective on September 3, 1996, Sundlun (as was the case with all other Names with 1992 and prior liabilities) became obligated to make payment of the Equitas premium by September 30, 1996. Approximately 95 percent of Names accepted the settlement offer component of R&R and paid their liabilities under the terms of the settlements.

Sundlun tendered his resignation of his underwriting membership in Lloyd's to be effective on or about December 31, 1992. As a result, Sundlun ceased to underwrite at Lloyd's but, in accordance with the 1979 and 1987 General Undertakings and subsequent Byelaws and agreements, Sundlun would continue as a member until all obligations were settled by Lloyd's. Sundlun did not satisfy his respective obligations in the amount claimed, or at all.

Mr. Demery will also testify regarding the collection actions brought to recover the unpaid obligations from the non settling Names, and in particular the proceeding brought against Sundlun to enforce his contractual obligations. Mr. Demery will further testify regarding the service of process on Sundlun, the correspondence and notices sent to Sundlun, the entry of the English Judgment against Sundlun, and the amount of the English Judgment presently due and owing.

Mr. Demery will also testify regarding the "test cases" brought in the English Courts adjudicating various defenses to the liability of the Names, including the validity of the service of process and consent to jurisdiction raise by other non- settling Names. Each of these cases was resolved in Lloyd's favor.

Mr. Demery will also testify that the English Judgment entered against Sundlun is final, conclusive and fully enforceable in England. No further appeal is possible within the English legal system, no application has been made to set it aside and no stay has been issued preventing enforcement of the judgments. Post-judgment interest in the amount of eight percent per annum is currently accruing on the judgment. Despite numerous attempts by Lloyd's to settle its claims, Sundlun has failed to take any action to reduce or satisfy the English Judgment, leaving the entire amount of the judgments (less the amount of £2.68 which has been received by Lloyd's

and credited against the judgment), together with interest that is currently accruing, due and owing.

**Bruce G. Sundlun**: It is anticipated that Bruce G. Sundlun will testify regarding his signatures on the relevant documents, including application materials, the General Undertaking and correspondence he sent to Lloyd's or its agents. Mr. Sundlun will also testify regarding the correspondence he received from Lloyd's and its agents.

## 2. SUPPORTING LAW

Lloyd's filed this action under the Rhode Island Uniform Enforcement of Foreign Judgments Act, R.I. Gen. Laws § 9-32-1 (the "Enforcement Act") in order to enforce the English Judgment it obtained against Defendant Bruce G. Sundlun. American courts have previously granted judgment for Lloyd's in at least 14 other cases in which Lloyd's sought to enforce English Judgments against Names in the federal courts.[1]

In order to enforce the English Judgment against Sundlun, Lloyd's must establish that the English Judgment is valid and enforceable under English law and that service of process was properly made upon Sundlun so as to confer personal jurisdiction over Sundlun.

### A. Sundlun Was a Member of Lloyd's Subject to the Obligations Set Forth in the English Judgment.

Sundlun was an underwriting member of Lloyd's from January 1, 1979 through December 31, 1992. Sundlun personally took various steps and demonstrated his financial

[1] *See Society of Lloyd's v. Turner*, 303 F.3d 325 (5th Cir. 2002); *Society of Lloyd's v. Ashenden*, 233 F.3d 473 (7th Cir. 2000); *Society of Lloyd's v. McKellor*, No. CV-5-03-1249-KJD-LPL (D. Nev. Oct. 3, 2003); *Society of Lloyd's v. Shields*, No. 3:03-0032 (D. Tenn. Oct. 1, 2003), *aff'd*, 2004 WL 2649782 (6th Cir. 2004); *Society of Lloyd's v. Evnen*, No. 8:02cv118 (D. Neb. April 28, 2003); *Society of Lloyd's v. Davies*, No. 1:02-cv-1602-GET (N.D. Ga. April 23, 2003); *Society of Lloyd's v. Mullin*, 255 F. Supp. 2d 468 (E.D. Pa. 2003); *Society of Lloyd's v. Borgers*, 127 Fed. Appx. 959 (9th Cir. 2005); *Society of Lloyd's v. Blackwell*, No. 02CV488-T (S.D. Cal. 2003); *Society of Lloyd's v. Bennett*, No. 2:02-CV-204TC (D. Utah 2002) *aff'd*, 402 F.3d 982 (10th Cir. 2005); *Society of Lloyd's v. Reinhart*, No. 02-264 (D.N.M. 2002), *aff'd*, 402 F.3d 982 (10th Cir. 2005); *Society of Lloyd's v. Rosenberg*, No. 02-1195 (E.D. Pa. 2002); *Society of Lloyd's v. Grace*, 718 N.Y.S.2d 327 (1st Dep't 2000); *Society of Lloyd's v. Webb*, 156 F. Supp.

means in order to become a member of Lloyd's on or about January 1979. Sundlun personally signed applications and provided financial information to Lloyd's with the specific purpose of becoming an underwriting member of Lloyd's. Moreover, Sundlun acknowledged his potential unlimited liability and risks of membership.

By tendering his resignation on or about October, 1992, Sundlun expressly admitted that he was an underwriting member until the end of 1992 "***and following this time as from which reinsurance to close in respect of every year of account of every syndicate of which I am a Member has taken effect***." (Emphasis added.) Thus, although Sundlun ceased underwriting new business effective December 31, 1992, Sundlun's "period of membership" continued until all of his unpaid underwriting obligations were paid and settled by Lloyd's. As set forth in the 1979 General Undertaking, Sundlun remained a member until all the accounts of any underwriting business entered into by Sundlun or on his behalf shall have been fully wound up, and he was further obligated to make arrangements for the discharge of his outstanding liabilities.

By its terms, the Reconstruction and Renewal Byelaw of 1995 applies to all members and former members who remain subject to liabilities to which the Equitas scheme relates. The Equitas scheme related to underwriting obligations in 1992 and prior underwriting years. Since Sundlun was an underwriting member in 1992 and for over ten years prior thereto, he continued as a member subject to all Byelaws and agreements until his liabilities were settled or extinguished. Sundlun's obligation for reinsurance premiums for the closure into Equitas of a number of his accounts was the subject of the English Judgment.

---

2d 362 (N.D. Tex. 2001), *aff'd*, 303 F.2d 325 (5th Cir. 2002); *Society of Lloyd's v. Edelman*, 2005 WL 639412 (S.D.N.Y. 2005).

Accordingly, Sundlun is liable for the premium adjudged in the English Judgment for obligations arising from his membership in 1992 and prior underwriting years.

**B. The English Judgment Is Conclusive And Enforceable Because The English Courts Had Personal Jurisdiction Over Defendant.**

**i. The English Judgment Is Enforceable Under Principals of Comity and Full Faith and Credit.**

Well established principles of international comity direct that the English Judgment be enforced in this Court. In an exhaustive treatment of the subject, the United States Supreme Court held, over a century ago:

> [W]e are satisfied that, where there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect, the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial or an appeal, upon the mere assertion of the party that the judgment was erroneous in law or in fact.

*Oman Intern. Finance Ltd. v. Hoiyong Gems Co*, 616 F. Supp. 351, 357 (D.R.I. 1985) (quoting from *Hilton v. Guyot*, 159 U.S. 113, 202-03, 16 S.Ct. 139, 158, 40 L.Ed. 95 (1895) (Gray, J.).

None of these considerations are present in the instant case, as the English judicial system has been consistently been accepted as fair and neutral by federal courts and indeed is the origin of this country's concept of due process. *Society of Lloyd's v. Ashenden*, 233 F.3d at 476 ("Any suggestion that this system of courts does not provide impartial tribunals or procedures compatible with the requirements of due process of law borders on the risible.) (collecting cases)

This Court in *Oman Intern. Finance Ltd. v. Hoiyong Gems Co.*, went on to apply federal due process standards to determine the enforceability of a foreign judgment:

> The critical inquiry in this regard is a familiar one; jurisdiction depends on principles of due process. The reviewing court must determine whether the defendant's contacts with the original venue (in this case, Hong Kong) were such that maintenance of the earlier suit and the requirement that the defendant be bound by the judgment therein comport with "traditional notions of fair play and substantial justice." *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). Of central relevance to this equation is the degree to which a defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

*Id.* at 358. Thus, a judgment obtained in a foreign nation will be enforceable in this Court where the foreign tribunal had personal jurisdiction over the defendant. Other cases addressing nearly identical English Judgments obtained by Lloyd's, have held that the procedures set forth herein comported with due process and accordingly enforced the judgments. *Society of Lloyd's v. Edelman*, 2005 WL 639412 (S.D.N.Y. 2005) (collecting cases).

Along similar lines, Rhode Island has adopted the Uniform Enforcement of Foreign Judgments Act, R.I. Gen. Laws § 9-32-1 *et seq*. which streamlines the enforcement of foreign judgments defined as "any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this state." Although this statute has not been applied to a judgment from a foreign country, the reasoning in the cases applying this statute is instructive; to wit: where courts of sister states have properly exercised subject-matter and personal jurisdiction, their judgments will be enforced in Rhode Island. *JH v. RB*, 796 A.2d 447 (R.I. 2002) (granting summary judgment based upon divorce judgment obtained in Florida.)

Thus, where the court in which the judgment was obtained had personal jurisdiction over the defendant, the judgment will be enforced under Rhode Island law. *C & J Leasing Corp. v. Paolino*, 721 A.2d 839 (R.I. 1998). *See also Video Products Distributors, Inc. v. Kilsey*, 682

A.2d 1381 (R.I. 1996) (defendant may defeat subsequent enforcement of default judgment in another forum by showing that judgment was issued by a court lacking personal jurisdiction.)

Consequently, pursuant to principles of international comity and due process, the English Judgment must be enforced by this Court.

**ii. <u>Defendant Sundlun Consented to Personal Jurisdiction in England.</u>**

As summarized by the *United States Supreme Court in Mitsubishi Motors, Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985), addressing the enforceability of an arbitration provision:

> We conclude that concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a domestic context.

*Id* at 629. The Court cited to its earlier holding in *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. (1972), enforcing a forum selection clause choosing England as its forum, recognizing that "agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting." *Id* at 13-14.

Sundlun agreed when he executed the General Undertaking to submit to jurisdiction in England. In the General Undertaking he agreed to submit "any dispute arising out of or relating to his membership of, and/or underwriting business at Lloyd's," to resolution in the courts of England. Thus, before the commencement of the English actions, Sundlun agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved.

The type of forum selection clause contained in the General Undertaking is valid and enforceable under Rhode Island law. *American Biophysics Corp. v. Dubois Marine Specialties,* 411 F. Supp. 2d 61 (D.R.I. 2006) (Canadian corporation waived right to challenge personal

jurisdiction by entering into contract containing forum selection clause); *Microfibres, Inc. v. McDevitt-Askew*, 20 F. Supp. 2d 316 (D.R.I. 1998) (objection to personal jurisdiction waived when employee signed agreement consenting to Rhode Island as forum).

Courts of Appeals in at least eight different circuits have upheld the validity and enforceability of the forum selection clause contained in the General Undertaking. *See The Society of Lloyd's v. Cohen*, 2004 WL 1759248 (5th Cir. 2004) ("As the General Undertaking makes clear, Cohen irrevocably agreed to submit to the jurisdiction of the foreign country court with respect to the subject matter involved. As such, under . . . the Texas Recognition Act this Court may not refuse to recognize a foreign judgment for lack of personal jurisdiction."); *Lipcon*, 148 F.3d 1285; *Richards*, 135 F.3d 1289; *Haynsworth*, 121 F.3d 956, *cert. denied*, 523 U.S. 1072; *Allen*, 94 F.3d 923; *Bonny v. Society of Lloyd's*, 3 F.3d 156 (7th Cir. 1993), *cert. denied*, 510 U.S. 1113 (1994); *Roby v. Corporation of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993), *cert. denied*, 510 U.S. 945 (1993); *Society of Lloyd's v. Reinhart*, No. 02-264 (D.N.M. 2002), *aff'd*, 402 F.3d 982 (10th Cir. 2005); *Riley v. Kingsley Underwriting Agencies, Ltd.*,969 F.2d 953 (10th Cir. 1992), *cert. denied*, 506 U.S. 1021 (1992); *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227 (6th Cir. 1995); *Society of Lloyd's v. Borgers*, 127 Fed. Appx. 959 (9th Cir. 2005).

Since Sundlun agreed to submit to the jurisdiction of the courts of England with regard to his activities as a Name, Defendant's arguments concerning personal jurisdiction should be rejected. *C & J Leasing Corp. v. Paolino*, 721 A.2d 839 (R.I. 1998) (holding that lease consenting to Iowa forum valid under Rhode Island law because, "a party who signs an instrument manifests his assent to it and cannot later complain that he did not read the instrument of that he did not understand its contents.")

**C. The English Judgment Is Conclusive And Enforceable Because The Defendant Was Properly Served With Process.**

**i. <u>Defendant's Agent Was Served In England.</u>**

Defendant Sundlun's agent was served with the English proceedings in England. This constituted valid service on the Defendant himself, and subjected Sundlun to personal jurisdiction in England. *See Farm Credit Bank of Baltimore v. Ferrera-Goitia*, 316 F. 3d 62, 68 (1st Cir. 2003) (recognizing that personal jurisdiction is usually obtained by service of process in the forum). "Service of process constitutes the vehicle by which the court obtains jurisdiction" over a defendant. *Cole v. Central States Southeast*, 225 F. Supp. 2d 96, 97 (D. Mass. 2002).

It is basic that service of process upon a defendant's agent constitutes effective service on the defendant himself. *See, e.g., Microfibres, Inc. v. McDevitt-Askew*, 20 F. Supp. 2d at 322 (attorney authorized to accept service of process); *Holloway v. Wright & Morrissey*, 739 F. 2d 695 (1st Cir. 1984) (corporation that appoints agent to accept service of process in forum also consents to exercise of personal jurisdiction); *Echeviarria-Gonzalez v. Gonzalez-Chapel*, 849 F.2d 24, 31 (1st Cir. 1988); *Tech Hills II Assoc. v. Phoenix Home Life Mutual Ins. Co.*, 5 F.3d 963, 968 (6th Cir. 1993).

For this reason, service of process on a defendant's agent confers personal jurisdiction over the defendant himself. *See Barr v. Zurich Insurance Co.*, 985 F. Supp. 701, 704 (S.D. Tex. 1997) (holding receipt of initial pleading by authorized agent to constitute receipt by defendant); *Bodden v. Union Oil Co.*, 82 F. Supp. 2d 584, 588-89 (E.D. La. 1998) (holding service on authorized agent to constitute service on defendant regardless of whether agent forwards notice of suit).

In the context of Lloyd's collection actions against Names, courts have made clear that, in keeping with the principles discussed above, service on a Name's Member's Agent or Substitute

Agent constitutes good service on the Name himself. To begin with, there is no question that the Names' agents were validly appointed. The courts of England have specifically rejected arguments that the Names' Substitute Agent, AUA9, had not been duly appointed. The American courts have reached the same conclusion. *See, e.g., Turner*, 303 F.3d at 328 ("As Lloyd's was contractually authorized to do, Lloyd's appointed a substitute agent for the non-accepting Names."); *Society of Lloyd's v. Webb*, 156 F. Supp. 2d 632, 636 (N.D. Tex. 2001), *aff'd* 303 F.3d 325 (5th Cir. 2002) ("Lloyd's used its bye-law powers from the Act 1982 to appoint a Substitute Agent.")

Because the Names' agents were validly appointed, American courts have repeatedly held that service on a Name's agent constitutes good service on the Name himself. In so holding, the courts have rejected arguments from other Names that service on the agent did not amount to service on the Name. *See Cohen, supra* at 14 (rejecting Name's argument that service on Substitute Agent did not affect good service on Name; "AUA9 was Cohen's agent and through this agency relationship Cohen received adequate notice of the foreign proceeding.")

In short, Sundlun's defense that service of process was not sufficient is without merit because it complied with the terms of the governing agreements and documents.

**ii. <u>Defendant Sundlun Received Adequate Notice Of The English Proceedings.</u>**

There is no requirement under Rhode Island or federal law that defendants receive actual notice of legal proceedings, where, as here, an appointed agent received service. *Microfibres, Inc. v. McDevitt-Askew*, 20 F. Supp. 2d at 322. Any argument to the contrary is without merit and must be rejected. As shown above, service on the Defendant's agent constituted service on the defendant himself. For that reason, it simply does not matter whether the Defendant

physically received a copy of the English proceedings. *Bodden v. Union Oil Co., supra* at 588-89.

Moreover, as the relevant correspondence from Sundlun makes clear, Sundlun received actual notice of the English proceedings. By letter dated June 24, 1997, Sundlun acknowledged receipt of the courtesy copy of the writ of summons sent to him by Lloyd's solicitors, Dibb Lupton Alsop, on May 23, 1997. Sundlun neither entered his appearance nor otherwise defended the English action. Sundlun neither appealed the English Judgment nor moved to vacate it.

Accordingly, Sundlun had adequate opportunity to defend himself in the English court, the forum which he had consented to, and any attempt to contest the enforceability of the English Judgment in this Court must fail.

**D. Lloyd's is Entitled to Attorney's Fees and Costs.**

Plaintiff Lloyd's filed a motion for summary judgment, which was heard on February 21, 2007. Plaintiff's Motion for Summary Judgment was denied primarily because Defendant Sundlun had contested the authenticity of his signature on the governing documents. The parties engaged in discovery in accordance with this Court's Scheduling Order. Plaintiff engaged a handwriting expert who opined, without any qualifications or reservations whatsoever, that the signatures on the documents were in fact Sundlun's. After said expert report was produced to defense counsel, Sundlun withdrew this defense.

Lloyd's submits that it is entitled to the attorney's fees and costs incurred as a result of Sundlun's assertion of a groundless and frivolous defense with respect to the lack of genuineness of his signature.

In this regard, Rule 11 of the Federal Rules of Civil Procedure permits an award of attorney's fees and costs as a sanction for a frivolous defense that unreasonably multiplies the

proceedings. *Plante v. Fleet National Bank*, 978 F. Supp. 59, 65-69 (D.R.I. 1997). No showing of bad faith is required. *Id*. Moreover, it is appropriate for this Court to impose a monetary sanction of reasonable attorney's fees and costs to be paid to the Plaintiff, as Defendant Sundlun was objectively unreasonable in contesting his signature. *Id.* at 68. This defense thwarted summary judgment, as it purportedly created a genuine issue of material fact, and it necessitated the retention of a handwriting expert to authenticate Sundlun's signature. Under these circumstances, an award of attorney's fees and costs to Plaintiff is clearly warranted.

**3. EXHIBITS**

**A. Documents Pertaining to Sundlun's Membership in Lloyd's**

1. Copies of portions of Sundlun's membership application signed by Sundlun

2. Copies of portions of the application documents pertaining to Sundlun's assets and the evaluation of his financial means to become a member of Lloyd's

3. Copy of the Confirmation signed by Sundlun.

4. 1979 General Undertaking

5. 1987 General Undertaking

6. Copy of letter from Sundlun enclosing a Cover Note initialed by Sundlun as security for the 1986, 1987 and 1988 account years

7. Copy of letter from Sundlun tendering his resignation of his underwriting membership in Lloyd's to be effective on or about December 31, 1992

8. Copy of letter from Sundlun's accountant dated January 13, 1994 confirming that Sundlun would continue as a member until all obligations were settled by Lloyd's

**B. Governing Contracts and Byelaws**

9. Section 25.1 and Section 25.2 of the Equitas Reinsurance Contract (containing the choice of law clause consenting to the application of England's laws and a forum selection clause consenting to jurisdiction in the courts of England)

10. The Substitute Agents Byelaw (whereby Lloyd's had the power to appoint Substitute Agents to act on behalf of Names at the discretion of the Council of Lloyd's)

11. Schedule 3 of the Resolution and Directions of the Council of Lloyd's (appointing Additional Underwriting Agencies (No. 9) Limited ("AUA9") as the Substitute Agent on behalf of the Names)

12. Schedule 4 of the Reinsurance Contract

**C. Documents Pertaining to Service of Process and the English Judgment**

13. Writ of Summons served on AUA9 as Substitute Agent for Sundlun

14. Affidavit filed with the High Court of Justice, Queen's Bench Division, Commercial Court attesting to Service of Process on Sundlun.

15. Copy of letter dated May 28, 1997 from AUA9 to Sundlun with copies of the Writ of Summons and form for Acknowledgment of Service with which it had been served.

16. Copy of letter dated June 24, 1997, whereby Sundlun acknowledged receipt of the courtesy copy of the writ of summons sent to him by Lloyd's solicitors, Dibb Lupton Alsop, on 23 May 1997

17. Certified copy of the English Judgment in favor of Lloyd's and against Sundlun on June 24, 1997

18. Copy of letter dated July 2, 1997 to Sundlun from Lloyd's solicitors, Dibb Lupton Alsop informing him that default judgment had entered against him

**D. Related English Decisions**

19. Copy of Mr. Justice Colman's February 20, 1997 decision in *Society of Lloyd's v. Leighs & Ors* (Commercial Court, Queen's Bench Division), including as one of his rulings the determination that the appointment of AUA9 as a Substitute Agent was valid under English law

20. Copy of Decision in *Society of Lloyd's v. Richard Tropp*, (Commercial Court, Queen's Bench Division) rejecting challenge by American Names to service of process upon AUA9 as Substitute Agent

21. Affidavit of Attorney's Fees and Costs

**4. WITNESSES**

Nicholas Demery

Bruce G. Sundlun

**5. JURY INSTRUCTIONS**

This case is a bench trial and no jury instructions are necessary.

**6. PROBABLE LENGTH OF TRIAL**

Plaintiff anticipates that the trial of this case will require one to two days.

**7. ADDITIONAL MATTERS**

Since Defendant Sundlun withdrew his defense regarding the authenticity of his signature on the pertinent documents, after motion for summary judgment filed by the Plaintiff was denied and after Plaintiff retained a handwriting expert, Plaintiff requests attorney's fees and costs incurred as a result of the assertion of this defense. The legal basis for Plaintiff's claim for attorney's fees and costs is set forth under the Supporting Law section of this Pretrial Memorandum.

Plaintiff,
By its Attorney,

/s/ Matthew T. Oliverio

Matthew T. Oliverio, Esquire (#3372)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax
mto@om-rilaw.com

## CERTIFICATION

I hereby certify that a true copy of the foregoing *PLAINTIFF'S PRETRIAL MEMORANDUM* was filed electronically with the United States District Court for the District of Rhode Island and is available for viewing and downloading from the Electronic Case Filing system. The following attorney received service by electronic means on this 28th day of September 2007:

Robert G. Flanders, Jr., Esquire
Anna Piazza, Esquire
HINCKLEY ALLEN SNYDER LLP
1500 Fleet Center, Providence, RI 02903

/s/ Matthew T. Oliverio